956 A.2d 622 (2008)
CHRISTIANA CARE HEALTH SERVICES, INC., Defendants Below-Appellants/Cross-Appellees, and
Mary Ann Connor, D.O. and Van Buren Medical Associates, P.A., Defendants Below-Cross-Appellants/Cross-Appellees,
v.
Linda CRIST, Executrix of the Estate of Irene and Matthew Harris, Donald Harris, William Harris and Kathy McEvoy, Plaintiffs Below-Appellees/Cross-Appellees/Cross-Appellants.
No. 513, 2007.
Supreme Court of Delaware.
Submitted: April 30, 2008.
Decided: July 1, 2008.
Revised: August 4, 2008.
Rehearing Denied August 4, 2008.
*623 Dennis D. Ferri, Esquire (argued), and Amy A. Quinlan, Esquire, of Morris James, LLP, Wilmington, DE, for appellant/cross-appellee.
John A. Elzufon, Esquire (argued), and Diane M. Andrews, Esquire, of Elzufon Austin Reardon Tarlov & Mondell, P.A., Wilmington, DE, for cross-appellants/cross-appellees.
Richard A. Zappa, Esquire (argued), of Young Conaway Stargatt & Taylor, LLP, *624 Wilmington, DE, for appellees/cross-appellees/cross-appellants.
Before HOLLAND, JACOBS, and RIDGELY, Justices.
RIDGELY, Justice:
This appeal arises from a survival and wrongful death action brought by plaintiffs-appellees/cross-appellees/cross-appellants Linda Crist, executrix of the Estate of Irene and Matthew Harris, Donald Harris, William Harris and Kathy McEvoy ("Plaintiffs"). The defendants-cross-appellants/cross-appellees are Mary Ann Connor, D.O. and her professional association, Van Buren Medical Associates, P.A. ("Dr. Connor") and defendant-appellant/cross-appellee Christiana Care Health Services ("CCHS"). Plaintiffs alleged that Dr. Connor and CCHS were negligent in the professional care provided to Matthew Harris during his stay at the hospital following hip surgery. A Superior Court jury found that both Dr. Connor and CCHS were negligent, that their negligence was a proximate cause of Harris's death, and awarded damages of $2 million in favor of Plaintiffs. The jury attributed 40 percent of the fault to Dr. Connor and 60 percent of the fault to CCHS.
On appeal, CCHS argues that the trial court improperly allowed a line of questioning of Plaintiffs' expert witness, which tainted the testimony presented to the jury and prejudiced its defense. CCHS also contends that Dr. Connor's counsel's closing remarks referring to CCHS's expert witness's credibility were also prejudicial. On cross-appeal, Dr. Connor argues that CCHS's expert on causation gave an impermissible opinion on the standard of care that was never identified and confused the jury. We find no merit to these arguments.
On cross-appeal, Plaintiffs argue that the trial judge erred as a matter of law in denying their request for prejudgment interest. Prior to trial, Plaintiffs made a settlement offer to Dr. Connor and CCHS for $1.25 million each, which both parties rejected. The trial judge found that the combined settlement offer exceeded the $2 million award of damages by the jury and denied prejudgment interest. We agree with Plaintiffs that the trial judge erred in denying prejudgment interest under 6 Del. C. § 2301(d). An award of prejudgment interest was required because Plaintiffs' settlement offer to Dr. Connor of $1.25 million, and its separate settlement offer to CCHS of $1.25 million, were each for an amount less than the amount of the $2 million judgment entered against them jointly and severally. We reverse the denial of Plaintiffs' motion for prejudgment interest and remand for further proceedings consistent with this Opinion.

I. Facts
Matthew Harris was seventy-four years old when he fell and fractured his hip on February 1, 2004. He was admitted to CCHS's hospital and, on February 5, asked for medication to help him sleep. At 6:50 p.m., the on-duty nurse called Ying Zhu, M.D., a member of Dr. Connor's medical practice group who was on call for Dr. Connor. Dr. Zhu prescribed 10 mg of Ambien, a sleep aide. The Ambien was administered at approximately 12:35 a.m. At approximately 4:30 a.m., Harris got out of bed and fell. Hospital staff notified Dr. Zhu of the fall.
Dr. Connor evaluated Harris at 9:25 a.m., and gave orders for his care, including a CT (CAT) scan to rule out any cranial injury, including a subdural hematoma. Dr. Connor ordered the CT Scan "routine" at that time. This CT scan was placed by the unit clerk as "CT head, with or without contrast" at 10:09. Around this *625 time, Harris's family came in and explained to Nurse Godek that Harris had had a similar problem in a previous hospital visit, and no CT scan was given. Nurse Godek took blood and notified Dr. Connor of the results between 10:40 and 10:50 a.m. Dr. Connor testified that because Harris's physical condition was "dramatically different," she ordered a CAT scan stat (immediately). There is no written documentation that Dr. Connor gave the nurse this order, and the nurse testified that she did not remember hearing it. A CT scan was eventually given to Harris at 2:45 p.m. The scan revealed that he had a subdural hematoma and needed emergency surgery to remove the clot. The surgery was performed, but Harris remained comatose after the surgery and died in the hospital ten days later.
As framed by Plaintiffs, the allegations of medical negligence were: Dr. Zhu should have only prescribed 5 mg of Ambien because of Harris's age; the nurse who administered the Ambien should not have done so because the chart did not indicate that he had difficulty sleeping;[1] and Dr. Connor should have ordered a stat CT scan, or, if she did order it, it should have been in writing as required by hospital policy and the standard of care. Experts testified on all of these issues. The jury found Dr. Connor and CCHS individually negligent, jointly and severally in a manner proximately causing Matthew Harris's death and awarded damages of $2 million.[2] Because defendants were allegedly joint tortfeasors with a right of contribution,[3] the jury was asked to apportion fault. The jury found Dr. Connor to be 40 percent at fault and CCHS to be 60 percent at fault. The Superior Court denied defendants' post-trial motions for a new trial and plaintiffs' motion for prejudgment interest. This appeal followed.

II. Discussion

A. The Leading Questions
CCHS argues that Plaintiffs' attorney led his expert witnesses improperly throughout his direct examinations. CCHS objected several times and was eventually granted a continuing objection on this point. The trial judge overruled the objections, stating that the witnesses were experts. He later explained that the questions were not leading or "barely leading" and that experts are "less likely to give an answer suggested by an attorney."
"A trial judge has discretion to exercise reasonable control over the mode and order of the interrogation of witnesses."[4] This Court reviews trial management decisions for an abuse of discretion.[5] "An abuse of discretion occurs when a court has exceeded the bounds of reason in view of the circumstances, or so ignored recognized rules of law or practice so as to produce injustice."[6] "It is well-settled that a trial judge is responsible for management of the trial and is vested with broad *626 discretion to perform that function."[7]
A trial judge has broad discretion in allowing leading questions of a witness, including during the direct examination.[8] D.R.E. 611(c) provides the boundaries of this discretion: "Leading questions should not be used on the direct examination of a witness except as may be necessary to develop his testimony."[9] The rule proscribing leading questions on direct examination is grounded in the principle that "the most important peculiarity of the interrogational system is that it may be misused by suggestive questions to supply a false memory for the witnessthat is, to suggest desired answers not in truth based upon a real recollection."[10]
While the rule vests the trial judge with broad discretion to permit leading questions on direct examination, the record does not show that any party asked for the blanket ruling which the trial judge made in this case. Nor does the record show that the trial judge determined that leading questions were necessary to develop each witness's testimony as required by D.R.E. 611(c). Even though the trial judge did not apply D.R.E. 611(c) for each witness, CCHS has not demonstrated that the questions suggested false memories for any witness. To the contrary, it appears that even if some questions were leading, the experts testified in accordance with their own pre-trial disclosures. Accordingly, we conclude that the trial judge's error was harmless.

B. Counsel's remarks during closing
CCHS next argues that the trial judge abused his discretion by failing to correct Dr. Connor's counsel's comments about "the truth" during closing arguments. The issue was preserved through CCHS's motion for a new trial. We review a trial court's refusal to grant a new trial based on improper comment of counsel for abuse of discretion.[11] "To establish abuse of discretion the appellants must show that the improper comment was `significantly prejudicial so as to deny them a fair trial.'"[12]
CCHS argues that Dr. Connor's counsel's closing comments were improper and focuses on three statements (italicized):

Now, I want to talk about Dr. Cogen. I'm going to say a few things about Dr. Cogen, that quite frankly, aren't complimentary. It's not something that I, who represents doctors regularly, enjoy doing. It's not something, quite frankly, that my client enjoys having me do. But he was here yesterday and what he basically did, although he didn't come out and say it, he told you you can't believe Dr. Connor.
Now, the role of the jury is credibility. I don't dispute everything Mr. Zappa *627 says. But he did say one thing which I absolutely agree with. I even wrote it down. Credibility should not be for any witness to tell you who was telling the truth. No witness should tell you who was telling you the truth. He's right. That's your role. That is your role your role and your role alone.
Now, his presentation was shrouded in the concept, well, he's a record reviewer and, therefore, he's answeringgiving you expert opinions on how to do records. Okay, we'll get to that.

Incidentally, the fact that the hospital stood by Nurse Godek does not bother us. She is its employee, and they're standing by their employee. And even though we disagree, even though we think they're wrong, even though we think she's wrong, we can understand that. But Dr. Cogen's testimony was, in a word, over the top, and it was uncalled for. And it can't be believed, and there's no foundation, anyway....
Nurse Sammak said, if she had seen that "CT now," it was a call to arms. How interesting it is that Dr. Cogen won't even accept the testimony of the people who he's been hired to defend. Nurse Godek flatly said, "If I had been told `CT now,' that's all I need to know. I'd have done something." We don't thinkwe think she was told and didn't. That's your choice. But Dr. Cogen said that's not enough, end point discussion. He's paid to come down here, paid to give a theory, and he  he made sure that, whatever I asked him was going to fit that theory, except it doesn't fit this case. And that's important. That's why it's a search for the truth.

No objection was made contemporaneously to these statements. Nor did the trial judge intervene sua sponte. In response to CCHS's motion for a new trial, the trial judge found that "[i]n the context of Dr. Connor's counsel's entire and comprehensive closing argument, it cannot be said that the complained-of brief statements did, in fact, vouch for the credibility of witnesses."[13] Additionally, the jury was instructed to disregard any person, opinion, or belief offered by an attorney concerning testimony or evidence. In these circumstances we find no abuse of discretion in the trial judge's denial of the motion for a new trial.[14]

C. The causation expert's testimony that the outcome would have been different if a stat CT had been made between 10 AM and 11:15 AM
Dr. Connor next argues that the trial judge erred when he overruled his objection under D.R.E. 403[15] to certain testimony of Plaintiffs' causation expert. All of the standard of care experts agreed that so long as Dr. Connor had ordered a CT scan stat by 11:00 a.m. to 11:15 a.m., she would have satisfied the standard of care. During the direct testimony of Plaintiffs' causation expert, Plaintiffs' counsel, after verifying that the expert was *628 not there to testify about the standard of care, asked "if the CT scan which was performed and interpreted by Dr. Dross at 2:45 had indeed been performed and interpreted between 10 o'clock and 11:30, in your opinion, would Mr. Harris's outcome have been different?" Counsel for Dr. Connor objected and at sidebar asserted that the question would lead the jury to become confused under D.R.E. 403.
The trial judge overruled the objection, finding that the risk of confusion did not substantially outweigh the probative value and noted that defense counsel could cross-examine the witness. In denying the motion for new trial, the trial judge noted that the objection was not on the basis that this opinion was previously undisclosed. Further, the trial judge noted that during cross-examination, counsel confirmed that he was only a causation expert and that "nothing [the expert] said today should be interpreted as being critical of any of the doctors and nurses who treated Mr. Harris."
As with the leading questions, this is an evidentiary ruling that we review for abuse of discretion. Both during direct and during cross-examination, the jury was made aware that the expert was not making a comment on the standard of care. Rather, the question simply asked whether the outcome (effect) would have been different had the CT been performed within the window accepted as the standard of care (cause). The expert answered that it would have been different. On the record before us, we find no abuse of discretion.

D. The trial judge's denial of the plaintiffs' prejudgment interest
Plaintiffs have cross-appealed the denial of their application for prejudgment interest. Prior to trial, Plaintiffs made separate written offers to settle all claims against each defendant for $1.25 million. The offer to settle provided, in relevant part: "Plaintiffs are agreeable to a settlement of all of their claims against Van Buren Medical Associates and any and all of its physician employees, including Dr. Connor, for $1,250,000." An offer with the identical language was sent to counsel for CCHS. The offer was rejected. The jury awarded damages totaling $2 million, apportioning fault 40 percent for Dr. Connor and 60 percent for CCHS.
Plaintiffs filed a motion for costs and prejudgment interest pursuant to 6 Del. C. § 2301(d), which provides:
In any tort action for compensatory damages in the Superior Court or the Court of Common Pleas seeking monetary relief for bodily injuries, death or property damage, interest shall be added to any final judgment entered for damages awarded, calculated at the rate established in subsection (a) of this section, commencing from the date of injury, provided that prior to trial the plaintiff had extended to defendant a written settlement demand valid for a minimum of 30 days in an amount less than the amount of damages upon which the judgment was entered.[16]
Thus, if the settlement demand on a defendant is less than the amount of damages awarded by the jury against that defendant, the plaintiffs can recover prejudgment interest.
Plaintiffs assert that pursuant to this section, they were entitled to $469,477.44 in prejudgment interest. Defendants argued that no prejudgment interest should be awarded because the jury award, as apportioned to each individual defendant, was less than the individual settlement *629 offer.[17] The trial judge, applying § 2301(d), found that the total pretrial settlement demand was $2.5 million. While he acknowledged that Plaintiffs could collect the entire $2 million from each defendant, he found that the apportionment of the jury verdict demonstrated that each individual defendant's liability did not exceed the settlement demand. The trial judge found that the apportionment of the jury verdict was less than the settlement demand to the individual tortfeasors and denied prejudgment interest.[18] In reaching this decision, the trial judge focused on the total amount of the settlement offers.
Plaintiffs ask us to interpret the statute consistent with our interpretation of Rule 68 relating to offers of judgment.[19] Statutory interpretation rulings of a trial court are reviewed de novo.[20] In Cahall v. Thomas,[21] we explained that "[a]lthough a defendant may still phrase an offer of settlement as a collective one to multiple plaintiffs, an award of costs is only available under Rule 68 where the offer is formally apportioned among each of the plaintiffs individually."[22] Plaintiffs made their demand consistent with Cahall.
Under 6 Del. C. § 2301(d), "interest shall be added to any final judgment entered for damages awarded ... provided that prior to trial the plaintiff had extended to defendant a written settlement demand valid for a minimum of 30 days in an amount less than the amount of damages upon which the judgment was entered."[23] The $2 million judgment in favor of Plaintiffs was a common liability of both Dr. Connor and CCHS. Thus, Plaintiffs may collect upon the full amount of the judgment from either tortfeasor.[24] The written settlement demand for each tortfeasor was for less than $2 million.[25] *630 Although a jury apportionment of fault affects contribution among joint tortfeasors, it does not change the common liability of each tortfeasor to Plaintiffs for the entire amount of the judgment. The plain language of § 2301(d) requires that prejudgment interest be awarded when the settlement demand was less than the amount of damages upon which the judgment was entered, regardless of how the jury apportioned fault among the joint tortfeasors for purposes of contribution. Consequently, the trial judge erred in denying Plaintiffs' motion for prejudgment interest.

III. Conclusion
The judgment of the Superior Court is AFFIRMED IN PART and REVERSED IN PART, and REMANDED for further proceedings consistent with this Opinion.
NOTES
[1] Part of this argument also suggests that Harris may have been given two doses of Ambien, although the chart only indicated that one dose was administered at 12:35. Another part suggested that the dose he was given was too high for an elderly patient.
[2] The jury found that Dr. Zhu had not committed medical negligence in connection with her treatment.
[3] 10 Del. C. § 6302.
[4] Jones v. State, 940 A.2d 1, 16 (Del.2007) (citing D.R.E. 611(a)).
[5] Czech v. State, 945 A.2d 1088, 1095 (Del. 2008).
[6] Id. (quoting Lilly v. State, 649 A.2d 1055, 1059 (Del. 1994)).
[7] Id.
[8] See generally 3 Wigmore, Evidence § 770 (Chadbourn rev. 1970) (explaining that the application of the rule disfavoring leading questions on direct examination rests "largely, if not entirely, in the hands of the trial court" and "depends on the circumstances of each case, the demeanor of each witness, and the tenor of the preceding questions") (emphasis omitted).
[9] D.R.E. 611(c) (emphasis added). See also D.R.E. 611(a) ("The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.").
[10] 3 Wigmore, Evidence § 769.
[11] DeAngelis v. Harrison, 628 A.2d 77, 80 (Del. 1993).
[12] Id. (citation omitted).
[13] Crist v. Connor, 2007 WL 2473313, at *3, No. 05C-06-101 (Motion for a New Trial), at 7 (Del.Super.Aug. 31, 2007).
[14] Further, even if the remarks had some de minimis improper qualitywhich we do not findthe general jury instruction that counsel's remarks are not evidence presumably cured the error. The fact that the jury found Dr. Connor 40 percent liable also implicitly demonstrates that they did not entirely credit the attorney's closing remarks to believe Dr. Connor's testimony.
[15] D.R.E. 403 provides: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence."
[16] 6 Del. C. § 2301(d) (emphasis added).
[17] Crist v. Connor, 2007 WL 2473321, at *2, No. 05C-06-101 (Motion for Costs), at 5 (Del.Super.Aug. 31, 2007). CCHS also raised other arguments, which relate to the ambiguity of the word "tort" in 6 Del. C. § 2301(d) and whether § 2301(d) requires plaintiffs to make a specific demand for each action brought. The trial judge found that these arguments had been waived and did not address them. See id. at 5 n. 5. Because the trial court found that CCHS had waived this argument and did not address it, we agree with Plaintiffs that these arguments should not be considered on appeal. See Cahall v. Thomas, 906 A.2d 24, 27 n. 12 (Del. 2006) ("We note also that because this alternative argument was not fairly presented to the trial court, it has been waived."). Even if we find that the arguments were not waived, however, we find nothing ambiguous about the word "tort" or any reading of § 2301(d) that would exclude medical malpractice claims. Likewise, a plain reading of the statute does not support CCHS's second argument.
[18] Id. at 7, 2007 WL 2473321, at *3 ("Therefore, because the jury award, after apportionment of liability, as to each Defendant was less than the individual settlement offer made to each Defendant, Plaintiffs are not entitled to prejudgment interest under § 2301(d).").
[19] See Super Ct. Civ. R. 68, which provides in relevant part: "If the judgment finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer."
[20] Leatherbury v. Greenspun, 939 A.2d 1284, 1288 (Del.2007).
[21] 906 A.2d 24 (Del.2006).
[22] Id. at 27.
[23] 6 Del. C. § 2301(d) (emphasis added).
[24] In the event a party pays more than its pro rata share of the "common liability," it may recover contribution from another joint tortfeasor. See 10 Del. C. § 6302.
[25] Although the combined settlement demand exceeded the amount of the judgment, this fact is irrelevant. Plaintiffs, as a matter of strategy, may offer different settlements to one or more parties without notifying other parties of the settlement amount, or they may attempt to settle with one party and not another. Under the trial judge's interpretation of the statute, had one party settled and the damages awarded been the same, the combined settlement offer would have precluded any award of prejudgment interest, which would be contrary to the result envisioned by § 2301(d).